**Joanne BEMBENISTA, et al.,**
**Appellants,**

v.

**UNITED STATES.**

**No. 88–5091.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 14, 1988.
Decided Jan. 31, 1989.

---

Richard G. Moore, Springfield, Va., for appellants.

John C. Cleary, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee. Wayne P. Williams, Asst. U.S. Atty., Washington, D.C., entered an appearance, for appellee.

Before MIKVA, BUCKLEY, and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

This case requires us to decide the scope of governmental liability under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80 ("FTCA"), for a breach of the duty of protective care owed to a hospital patient. Following *Sheridan v. United States*, —— U.S. ——, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988), we find that section 2680(h) of the FTCA, the assault and battery exception, does not bar suit for such a breach, and we reverse the decision of the district court. We also affirm the district court's dismissal of a medical malpractice claim because we find that the administrative claim was not properly "presented" to

the United States Army within the meaning of 28 U.S.C. § 2675(a).

### I. BACKGROUND

On three occasions in late January 1983, Joanne Bembenista, the clinically blind wife of an Army captain, was sexually assaulted by a medical technician, Medical Specialist–5 Richard Bouchard, who had been assigned to care for her while she was under treatment for diabetic complications at Walter Reed Army Medical Center ("WRAMC") in Washington, D.C. Mrs. Bembenista was comatose or semi-comatose at the time, allegedly as a result of negligent mis-medication by her attending doctors. Bouchard was later court-martialed and sentenced to prison.

The Bembenistas presented their administrative claims to the Army on January 18, 1985, seeking aggregate damages of $800,-000. The Bembenistas each submitted copies of Standard Form 95 ("SF–95"), in which they described the basis of their claim as "sexual assaults by a medical specialist." They included personal affidavits and a 62–page cover letter from their attorney which described in detail the factual and legal background of the sexual assault claim. The Bembenistas also attached photocopies of Mrs. Bembenista's hospital records, which totalled nearly 400 pages, the Army Staff Judge Advocate's Review of Bouchard's court-martial, and excerpts from the court-martial record of trial.

On November 26, 1985, the Office of the Judge Advocate General denied the Bembenistas' administrative claims on the ground that they had failed to show a negligent act or omission of a United States employee acting within the scope of his employment. The Bembenistas filed their original complaint in the district court on May 22, 1986, and their first amended complaint on June 17, 1986. Their allegations included: medical malpractice on the ground that Mrs. Bembenista had been given too much insulin, which caused her to become comatose; breach of an implied contract to provide proper medical care; invasion of privacy; negligent retention and supervision of a medical technician

known to be psychologically disturbed; and negligent breach of a special duty of protective care owed to a hospital patient.

The amended complaint was dismissed by the district court on January 12, 1988, see Bembenista v. United States, 676 F.Supp. 18 (D.D.C.1988). First, the lower court considered the government's liability under the FTCA. Section 1346(b) of the FTCA provides federal liability for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b). Section 2680(h), however, excludes from the FTCA's waiver of sovereign immunity "[a]ny claim arising out of assault [or] battery." 28 U.S.C. § 2680(h). The district court relied upon a recent Supreme Court decision, United States v. Shearer, 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985) (denying recovery under the FTCA for the wrongful death of an Army private murdered by a fellow serviceman while both were off-duty), and barred recovery of all claims arising out of the medical technician's assaults on Mrs. Bembenista. These included the alleged breach of the protective duty owed to a hospital patient, as well as the contention that the government negligently retained and supervised the medical technician. 676 F.Supp. at 19–20. Next, the district judge held that the Medical Malpractice Immunity Act, 10 U.S.C. § 1089, did not waive the government's sovereign immunity in this case. 676 F.Supp. at 20–21. The judge found that the assaults upon Mrs. Bembenista did not occur within the scope of Bouchard's employment, but "were, rather, for his own 'personal gratification,'" 676 F.Supp. at 20–21 (quoting Doe v. United States, 769 F.2d 174, 175 (4th Cir.1985)). Finally, the district court dismissed Mrs. Bembenista's claim of medical malpractice, that she had given too much insulin, on the ground that it had not been "presented" at the administrative level to the Army as required by 28 U.S.C. § 2675(a).

This appeal followed.

## II. DISCUSSION

### A. *Jurisdiction*

██ We deal at the outset with the question of whether this court lacks jurisdiction under *United States v. Hohri,* 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987). The Court in *Hohri,* interpreting the 1982 Federal Courts Improvement Act, 28 U.S.C. § 1295(a)(2), held that "a mixed case, presenting both a nontax Little Tucker Act claim and an FTCA claim, may be appealed only to the Federal Circuit," 107 S.Ct. at 2253, and that a regional court of appeals lacks jurisdiction over such an appeal. The Tucker Act provides jurisdiction in the United States Claims Court, *inter alia,* for claims against the United States founded "upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort," 28 U.S.C. § 1491(a) (1), and the Little Tucker Act provides concurrent jurisdiction in the district courts and Claims Court for similar claims not exceeding $10,-000 in amount, 28 U.S.C. § 1346(a)(2). Appellants' complaint contains two counts of breach of contract to provide proper medical care, and although the Bembenistas do not press their contract claims on appeal, "[t]he plain language of the Federal Courts Improvement Act directs our attention not to the claims advanced on appeal but to the basis of the district court's original subject matter jurisdiction." *Van Drasek v. Lehman,* 762 F.2d 1065, 1068 (D.C.Cir.1985). If a plaintiff makes any claim that invokes the jurisdiction of the district court under the Little Tucker Act, then the entire case must be appealed to the United States Court of Appeals for the Federal Circuit. *See Brant v. Cleveland National Forest Service,* 843 F.2d 1222, 1223-24 (9th Cir. 1988).

We find that we have jurisdiction over this appeal because "however ingeniously [the claims] have been pleaded as something else," *Bembenista,* 676 F.Supp. at 21, the Bembenistas' implied contract claims do not fall within the Tucker Act or the Little Tucker Act. This is not the "mixed" case of *Hohri* where a plaintiff has alleged separate FTCA and Tucker Act claims. Rather, in this case the Bembenistas have asserted the same claim twice, labelling it a "tort" the first time and a "contract" claim the second. We find that if the implied contract to which appellants' complaint alludes is implied at all, it is implied in law, as a result of equity and public policy, rather than in fact. *See* Restatement (Second) of Torts § 314A (1965). Ordinarily, the implied agreements by a hospital to provide its patients proper medical care and protection against the assaults of third persons are said to arise out of status rather than contract. *See Hall v. Ford Enterprises, Ltd.,* 445 A.2d 610, 611 n. 4 (D.C. App.1982); *cf. Canterbury v. Spence,* 464 F.2d 772, 782 (D.C.Cir.) (noting the special relationship between doctor and patient), *cert. denied,* 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518 (1972).

The Tucker Act does not encompass contracts that are implied in law. *See Army & Air Force Exchange Service v. Sheehan,* 456 U.S. 728, 738 n. 10, 102 S.Ct. 2118, 2124 n. 10, 72 L.Ed.2d 520 (1982); *Merritt v. United States,* 267 U.S. 338, 340-41, 45 S.Ct. 278, 279, 69 L.Ed. 643 (1925). The duties of protective care and proper medical treatment may be established by contract, of course, but appellants have pointed to no written agreement or conduct by WRAMC that might indicate that a meeting of the minds occurred or otherwise create an implied-in-fact contract. *See Tree Farm Development Corp. v. United States,* 585 F.2d 493, 499-500, 218 Ct.Cl. 308 (1978). We conclude that the Bembenistas' claim "sound[s] in tort," 28 U.S.C. §§ 1346(a)(2), 1491(a)(1), and is not within the province of the Tucker Act or the Little Tucker Act. *See Tempel v. United States,* 248 U.S. 121, 129-31, 39 S.Ct. 56, 58-59, 63 L.Ed. 162 (1918); *Harley v. United States,* 198 U.S. 229, 234, 25 S.Ct. 634, 636, 49 L.Ed. 1029 (1905) (excluding from Tucker Act coverage "obligations that the law is said to imply from a tort"). If, on remand, appellants demonstrate the existence of an implied-in-fact contract, then the district court will have to determine the necessity of transferring the case to the Claims Court, and any appeal would lie to the Federal Circuit. We hold only that on the

record before us, there are no facts asserted that would support a finding of an implied-in-fact contract, and that the mere incantation of the term "contract" in appellants' complaint cannot oust our jurisdiction.

We deal here with the power of a court, under the well-pleaded complaint rule, to determine the actual nature of the claims before it. *See Christianson v. Colt Industries Operating Corp.,* —— U.S. ——, 108 S.Ct. 2166, 2173–74, 100 L.Ed.2d 811 (1988) (applying well-pleaded complaint rule in Tucker Act context); *National Ass'n of Counties v. Baker,* 842 F.2d 369, 373 (D.C. Cir.1988) ("in the 'murky' area of Tucker Act jurisprudence * * * one of the few clearly established principles is that the substance of the pleadings must prevail over their form") (quoting *Amoco Production Co. v. Hodel,* 815 F.2d 352, 361 (5th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 2898, 101 L.Ed.2d 932 (1988)). Litigants cannot manipulate Tucker Act jurisdiction by semantically recasting their claims in language of contract and tort. *See Doe v. United States Dept. of Justice,* 753 F.2d 1092, 1102 (D.C.Cir.1985). Indeed, Congress, in passing the Federal Courts Improvement Act, emphasized that it did "not intend[ ] to create forum shopping opportunities between the Federal Circuit and the regional courts of appeals," and it did not want federal court jurisdiction to be "manipulated" by artful pleading. S.Rep. No. 275, 97th Cong., 1st Sess. 19–20 (1981) U.S.Code Cong. & Admin.News 1982, pp. 11, 29–30. Rather, it expected "the integrity of the jurisdiction of the federal courts of appeals" to be ensured. S.Rep. No. 275, at 20, U.S.Code Cong. & Admin.News 1982, p. 30. We believe that our decision today advances that goal.

## B. *The FTCA Claims*

■ We turn now to the merits of appellants' claims. The district court granted the government's motion to dismiss on January 12, 1988. Six months later, the Supreme Court decided *Sheridan v. United States,* —— U.S. ——, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988), which adopted a new view of the assault and battery exception in the FTCA, a view that governs this case on appeal. We find that under *Sheridan,* the Bembenistas may proceed on a theory that the government is liable for a breach of duty to a hospital patient to whom it owed a special obligation of protective care.

In *Sheridan,* the Court held that the assault and battery exception did not bar suit by civilians whose car had been fired upon by an intoxicated off-duty serviceman named Carr. Carr had been found earlier that evening "lying face down in a drunken stupor," 108 S.Ct. at 2452, by three naval corpsmen who, instead of restraining him or alerting the proper authorities, simply fled when they saw he had a gun. Carr's roommate was also allegedly aware that he improperly possessed a gun, yet the roommate failed to comply with Navy regulations that he report this violation to the base authorities. 108 S.Ct. at 2455 n. 5. The Court found that the government's liability resulted not from the mere fact that it was Carr's employer, but rather from the fact that it had undertaken "good Samaritan" responsibilities to ensure that nobody on the naval base possessed a firearm without authorization and that visibly drunk and dangerous persons were restrained. 108 S.Ct. at 2455. Having assumed these obligations, the government had a duty to perform them non-negligently, and was liable to the Sheridans for its breach of *that* duty. The Court cited with approval *Doe v. United States,* 838 F.2d 220 (7th Cir.1988), which had imposed liability on the government based on violations of regulations that led to incidents of child molestation at an Air Force day care center. The Seventh Circuit reasoned that "the duty was breached and the claim arose when the government allegedly left the children alone, neglecting its voluntarily assumed duty to watch and protect them. The fact that they were assaulted only serves to show the damage from that neglect." 838 F.2d at 223. *See also Doe v. Scott,* 652 F.Supp. 549, 550 (S.D.N.Y.1987), *appeal dismissed,* 847 F.2d 834 (2d Cir. 1988).

Applying the logic of *Sheridan* to this case, we hold that the government can be

liable notwithstanding the language of section 2680(h) of the FTCA. WRAMC, under District of Columbia law, owed a duty to Mrs. Bembenista to protect her against foreseeable, injurious acts of third persons. "Traditionally, relationships that were considered to give rise to a duty of one party to protect the other part from foreseeable criminal acts of third persons have included the relationship [ ] of * * * hospital to patient * * *." *Hall v. Ford Enterprises, Ltd.*, 445 A.2d 610, 611 n. 4 (D.C.App.1982); *see also Kline v. 1500 Massachusetts Avenue Apartment Corp.*, 439 F.2d 477, 483 (D.C.Cir.1970) (noting that the hospital-patient relationship imposes a special duty on the hospital to "take reasonable precautions to protect the [patient] from assaults by third parties which, at least, could reasonably have been anticipated"). This duty was heightened by the fact that Mrs. Bembenista was known by the hospital to be blind and comatose or semi-comatose at the time of the attacks, *cf. Garfield Memorial Hospital v. Marshall*, 204 F.2d 721, 725 (D.C.Cir.1953) (noting that it is the duty of a hospital "to give a patient such reasonable care and attention as the patient's known condition requires"), and also by the allegation, which we must take as true because of the procedural posture of this case, that Mrs. Bembenista's helpless condition was a result of WRAMC's own medical malpractice. The hospital's mis-medication limited her "ability * * * to provide for [her] own protection." *Kline*, 439 F.2d at 483; *cf. Morgan v. District of Columbia*, 468 A.2d 1306, 1313 (D.C.App.1983).

WRAMC's duty of protective care arose out of its special relationship with Mrs. Bembenista; "[t]his theory of liability does not depend on the employment status of the intentional tortfeasor." 108 S.Ct. at 2458 (Kennedy, J., concurring in the judgment). WRAMC would be liable even if Mrs. Bembenista had been assaulted by a private person unconnected with the government. "[I]n a case in which the employment status of the assailant has nothing to do with the basis for imposing liability on the Government, it would seem perverse to exonerate the Government because of the happenstance that [the male-

factor] was on a federal payroll." *Sheridan*, 108 S.Ct. at 2455.

We therefore hold that, on the facts asserted, the assault and battery exception is not a bar to federal liability under the FTCA in this case, based on WRAMC's breach of the special duty of protective care that it owed to Mrs. Bembenista. The consequences of the assaults may be used as a measure of damages if appellants can demonstate on remand that WRAMC's breach of duty was a proximate cause of the assaults. *See Hicks v. United States*, 511 F.2d 407, 420–22 (D.C.Cir.1975). We need not reach the more troublesome question whether the government would be liable for the mere negligent retention and supervision of a medical technician known to be psychologically disturbed, *see* 108 S.Ct. at 2456 n. 8. Neither need we reach Mrs. Bembenista's claim that the government is liable under the FTCA according to her invasion of privacy theory, or her statutory claim under the Medical Malpractice Immunity Act.

## C.  *The Medical Malpractice Claim*

■ The Bembenistas also allege that the Walter Reed Medical personnel gave Mrs. Bembenista too much insulin, sending her into "insulin shock" and a comatose or semi-comatose state, and seek to recover damages for this injury. The district court dismissed the claim on the ground that it had not been "presented" at the administrative level to the Army, as required by 28 U.S.C. § 2675(a). We affirm the district court.

The Bembenistas filed SF–95 claim forms with the Army, which described only the sexual assaults and did not allege that any mis-medication had occurred. Neither the personal affidavits filed with the claim forms, nor the 62–page cover letter from the Bembenistas' lawyer, indicated that any malpractice had occurred. The Bembenistas also included with their administrative filing a copy of the Staff Judge Advocate's Review of Medical Specialist–5 Bouchard's court-martial, excerpts from the court-martial record of trial, and photocopies of nearly 400 pages of Mrs. Bemben-

ista's hospital records. Even if the SF–95s, affidavits, and cover letter were inadequate, the Bembenistas contend, the submission of these additional documents provided sufficient notice to the Army of their medical malpractice claim.

We disagree. The presentment requirement provides that "[a]n action shall not be instituted against the United States" for damages caused by the negligent or wrongful act of any employee of the government "unless the claimant shall have first presented the claim to the appropriate Federal agency." 28 U.S.C. § 2675(a). The applicable regulations, found at 28 C.F.R. § 14.12(a) (1988), provide that an FTCA claim shall be deemed "presented" when a federal agency receives an SF–95 "or other written notification of an incident, accompanied by a claim for money damages in sum certain."

In this case, the Bembenistas argue that the facts underlying their malpractice claim are contained within the more than 400 pages of medical records, transcripts, and Army documents appended to their SF–95s. We agree with the district court that by their very "prolixity" and unfocused nature these attachments "serve[d] as no notice at all of a potential malpractice claim," 676 F.Supp. at 22. To ask an agency to contemplate the nuances of every sentence in such a submission would hold it to a standard that even a court would be pressed to match.

Our recent decision in *GAF Corp. v. United States*, 818 F.2d 901 (D.C.Cir.1987), does not address this situation. The issue there was whether the claimants had "provided sufficient information regarding the claims presented," 818 F.2d at 921. Here, the problem, if anything, is reversed. Appellants have provided a vast collection of details that would overwhelm the capacity of even a scrupulous reader; the question is whether they ever "presented" the claim to which they now argue a few of those details relate. This could hardly be the type of fair notice that Congress envisioned when it fashioned the presentment requirement.

We conclude that the malpractice claim was properly dismissed.

### III. CONCLUSION

We hold that, based on *Sheridan*, appellants' claim under the FTCA for a negligent breach of the protective care duty owed to Mrs. Bembenista is not barred by the assault and battery exception. We also hold that the district court did not err in dismissing the appellants' claim of medical malpractice, because we agree that the Bembenistas did not properly present their malpractice claim to the Army.

Appellants seek remand to a district judge other than Judge Thomas Penfield Jackson, under 28 U.S.C. § 2106. Applying *United States v. Robin*, 553 F.2d 8, 10 (2d Cir.1977), we find that there is no reason to transfer the case to a different judge on remand. Judge Jackson has shown no bias toward appellants, nor is there any indication that he would have difficulty in applying our holding today in light of his previously expressed views. In dismissing the Bembenistas' claims, Judge Jackson relied on *United States v. Shearer*, 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985), the most recent Supreme Court treatment of the assault and battery exception at that time, and his ruling was superseded six months *later* by *Sheridan v. United States*, — U.S. —, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988). We also find no reason to transfer the remand on the basis of Judge Jackson's analysis of section 2675(a), with which we agree. Furthermore, the disputed issues in this case will not remain on remand: this court has ruled that the assault and battery exception does not bar a suit for breach of the duty of protective care and that appellants did not adequately "present" their administrative claims. Judge Jackson has not prejudged, nor even examined, the remaining issues to be decided in this case.

The case is remanded to Judge Jackson for proceedings not inconsistent with this opinion.

*It is so ordered.*