OWEN, Circuit Judge,
concurring:
I fully concur in Parts I and IIA of the court’s opinion, and I concur in the judgment remanding this case for further proceedings. However, the United States Supreme Court expressly left open a difficult issue in Sheridan v. United States, which is “whether negligent hiring, negligent supervision, or negligent training may ever provide the basis for liability under the [Federal Tort Claims Act] for a foreseeable assault or battery by a Government employee.”[1] In today’s decision, the majority asserts in Part IIB that it is “not express[ing] an opinion as to whether a claim of negligent supervision would be barred,”[2] but the undeniable effect of its holding is that such claims are not barred in this case. I nevertheless concur in the judgment because this circuit’s pre-exist-ing precedent leads to the conclusion that a broader duty of care owed to an injured party could be breached by negligently supervising an employee, and the government may be liable for such a breach.[3]
I
The parties had the opportunity to develop fully the record in this case during a bench trial at which sixteen witnesses testified. The plaintiffs presented evidence that employees of the Cen-Tex VA hospital failed to investigate timely or adequately complaints that Dr. Vagshenian had engaged in inappropriate contact with patients. The plaintiffs relied on a report by the VA’s Clinical Review team that concluded, “If the proper follow-up and investigation had been done in February 2000, it is likely that Dr. Vagshenian’s behavior would have been discovered then.” Dr. Vagshenian sexually abused the plaintiffs in 2001. An expert witness additionally testified that the VA’s failure to investigate in accordance with its patient abuse policy violated the standard of care owed to outpatients such as the plaintiffs.
At the close of the evidence, the government moved for dismissal of all claims against all defendants under Rule 52(c),[4] and the district court granted that motion, concluding that none of the claims were cognizable under the Federal Tort Claims Act and therefore that subject matter jurisdiction was lacking. With regard to the claims asserted against the government, the district court held in each plaintiffs *492 case that “by framing his claim in terms of the VA’s negligent failure to prevent an assault, Plaintiffs claim is nothing more than a claim for negligent supervision” that “is related to the VA’s employment relationship with Dr. Vagshenian.” The district court reasoned that the plaintiffs had failed to “identify any independent, antecedent duty unrelated to the VA’s employment relationship with Dr. Vagsheni-an.”
II
The Federal Tort Claims Act grants “exclusive jurisdiction of [certain] civil actions on claims against the United States, for money damages” and has been construed as a waiver of immunity from suit
for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.[5]
Section 2680(h) provides that the foregoing waiver “shall not apply to ... any claim arising out of assault [or] battery,” subject to a provision for law enforcement officials not relevant here.[6] The question with which courts have struggled is the extent to which this exception applies when the person who commits an assault or battery is the employee of the government. The decisions are nuanced and often conflicting.
Our most recent guidance from the Supreme Court is Sheridan,[7] Although leaving open “whether negligent hiring, negligent supervision, or negligent training may ever provide the basis for liability under the FTCA for a foreseeable assault or battery by a Government employee,”[8] the Court cited with approval[9] a decision from the Seventh Circuit, Doe v. United States.[10] In Doe children committed to the care of an Air Force base day care center were sexually molested, and it was not known whether the perpetrator was a government employee or whether the molestations occurred on or off the government’s premises. The fact that the assault may have been committed by an employee was not an obstacle to imposing liability on the government. The Supreme Court said that “[t]he Government’s responsibility for an assault may be clear even though the identity of the assailant is unknown,” and that the Seventh Circuit “was certainly correct in holding that it would be irrational to bar recovery if the assailant happened to be a Government employee, while permitting relief if he was not.”[11]
In Doe, the Seventh Circuit drew what it termed a “clear and firm” line to serve what it perceived to be “the dual congressional purposes of allowing legitimate independent negligence claims while foreclosing disguised respondeat superior claims.”[12] Citing the plurality opinion in Shearer[13] the Seventh Circuit reasoned *493 that the legislative history of the exception for assault and battery “points toward the notion that Congress used the broader section 2680(h) language so that plaintiffs could not disguise respondeat superior claims as ‘negligent supervision’ claims, sneaking them in through the courthouse back door.”[14] The line Doe drew was: “Where the government affirmatively assumes a duty to the victim prior to the assault, and the government breaches that duty causing injury to the victim, we cannot say that her claim arises out of the assault.”[15] The duty that the court said was owed in that case was the duty to “watch and protect” the victims,[16] and the government’s breach was “failure to supervise the children in its care.”[17]
This circuit had occasion to consider Sheridan in Leleux v. United States, in which the court was presented with allegations that the government failed to protect a government employee from an alleged battery by her supervisor.[18] Leleux was a Navy recruit who submitted to sexual intercourse with a Navy officer after he fraternized with her a number of times off the naval base (in violation of Navy regulations) and plied her with alcohol (in violation of state alcoholic beverage laws due to her age). The naval officer allegedly
transmitted genital herpes to Leleux during these encounters. This court opined that Leleux’s “negligent training and supervision claimfs]” are “likely preclude[d],”[19] citing Sheridan,[20] the Supreme Court’s earlier, plurality decision in United States v. Shearer,[21] and this court’s decision in Garcia v. United States.[22] The court then proceeded to analyze Leleux’s claims, holding they “patently fail[ed]” under Sheridan because they were “related to the employment relationship between the United States [and the offending Naval officer].”[23] The claims this court expressly rejected included “negligent failure to protect Leleux from [the officer’s] misuse of his position” and “negligent training and supervision.”[24] The court observed, “Leleux does not allege that the Government had any duty to protect her independent of its employment relationship with [the officer]; Leleux references no regulation or duty assumed by the Navy that concerns the Navy’s responsibility for the welfare of third parties.”[25] This court ultimately concluded that “Sheridan stands for the principle that negligence claims related to a Government employee’s § 2680(h) intentional tort may proceed where the negligence arises out of an independent, ante *494 cedent duty unrelated to the employment relationship between the tortfeasor and the United States.”[26]
There is tension between the conclusion that “negligent training and supervision claimfe]” are “likely preelude[d]” and the recognition of a cause of action against the government if there is “an independent, antecedent duty unrelated to the employment relationship between the tortfeasor and the United States.”[27] In the case before us today, the allegations of negligence on the part of government employees boil down to their failure to supervise Dr. Vagshenian. The fact that under Texas law, there may be an antecedent, independent duty to protect patients from employees and third parties alike does not change the analysis that the government’s liability, if any, largely hinges on its failure to supervise its employee. The only assertion the plaintiffs have made against the government that arguably does not constitute a negligent supervision claim is their contention that another staff member should have been present during all physical examinations of patients. That claim is similar to the fact pattern in Doe, in which the sexual assaults of the children could have been prevented had the children been attended at all times. However, it is doubtful that in the case before us, requiring the presence of another during examinations would have prevented the plaintiffs’ abuse. The government’s overarching failure was the failure to recognize and address Dr. Vagshenian propensities as a sexual predator.
In today’s decision, the majority says that it “need not express an opinion as to whether a claim of negligent supervision would be barred by § 2680(h).”[28] But the duty the court recognizes appears to permit liability to be based on just such a claim, and under the facts of this case, liability can be pinned on little else. If there is some means by which the government breached its duty of care to patients such as the plaintiffs other than negligent supervision or retention of Dr. Vagshenian, the majority should identify what it is.
The District of Columbia Circuit’s decision in Bembenista v. United States,[29] on which the majority relies, is instructive in this regard. A clinically blind patient was sexually assaulted by a medical technician who was employed by the government.[30] The District of Columbia Circuit held that the plaintiff had stated a claim when she alleged that other employees of the medical facility had over-medicated her with insulin, rendering her unconscious or semi-comatose and unable to protect herself, and that she could prevail by proving this breach proximately caused her assaults.[31] That court expressly declined to decide whether the government could be liable on the basis that it allegedly retained and supervised an employee known to be psychologically disturbed.[32]
The majority attempts to avoid, unsuccessfully I submit, crossing this bridge. Nevertheless, in the final analysis, the court seems to have done so already in Leleux v. United States.[33] Leleux’s pre *495 diction that negligent supervision claims are precluded must give way to the holding it enunciated. Under this circuit’s precedent, the inquiry is whether the government, in operating the Cen-Tex VA facility, owed its outpatients “an independent, antecedent duty unrelated to the employment relationship between the tort-feasor and the United States.”[34] That formulation does not seem to recognize an exception for circumstances in which such a duty is breached by the government’s failure to supervise an employee.
We look to state law to determine what duties exist. The plaintiffs were outpatients and invitees on the premises of the hospital. The leading case in Texas regarding the duty to protect invitees from foreseeable assaults by third parties, generally, is Timberwalk Apartments, Partners, Inc. v. Cain.[35] However, when a claim is asserted that a health care facility failed to protect a patient from an assault, the duty can be more particularized than the general duty to protect from foreseeable assaults by third parties. For purposes of determining whether the Texas Medical Liability Insurance Improvement Act[36] applies, the Supreme Court of Texas has held that there is a “distinction between health care liability claims,” and that “[t]he obligation of a health care facility to its patients is not the same as the general duty a premises owner owes to invitees.”[37] In a case in which a nursing home resident was sexually assaulted by another patient, that court held that “judgments concerning health and medical care, including protection of patients, are made by health care professionals as part of the care and treatment of the patients admitted to their facilities,”[38] and that the supervision of the patient who was assaulted and the patient who assaulted her “are inseparable from the accepted standards of safety applicable to the nursing home.”[39]
In determining whether Texas law imposes a duty unrelated to the government’s employment of Dr. Vagshenian, the fact that he is a physician and that the plaintiffs claim the government failed to engage in an adequate review of Dr. Vagshenian and his contacts with patients is also pertinent to the inquiry. In Texas, as a general proposition, physicians are not employees of hospitals or similar facilities because the corporate practice of medicine is prohibited, with limited exceptions.[40] Physicians attend patients as independent contractors or obtain privileges to practice at a hospital or medical facility. It is an open question under Texas law whether a hospital or similar facility owes a common-law duty to patients in credentialing and in the peer review of such physicians.[41] The Supreme Court of Texas has recognized *496 that the lower Texas courts have split on this issue,[42] but has thus far left the question unresolved.[43] The Supreme Court of Texas has recognized, however, that “credentialing is an ongoing and continuous process ... including] not only a hospital’s initial decision to grant staff privileges, but also formal reevaluations, and continual monitoring and assessment of physician competence,” and that “negligent credentialing claims are health care liability claims under the [Medical Liability Insurance Improvement Act] because they involve claimed departures from accepted standards of health care.”[44] To the extent that a health care entity[45] credentials physicians and exercises medical peer review,[46] section 160.101 of the Texas Occupation Code applies,[47] and it “prescribe[s] a threshold standard of malice to state a cause of action against a hospital for its credentialing activities.”[48]
The evidence reflects that the employees of the government did undertake to evaluate and investigate Dr. Vagshenian, including some of his questionable practices with patients, before the sexual abuse of the plaintiffs in this case occurred. Texas law establishes a standard of care in exercising medical peer review of physicians who are not employees. Accordingly, Texas law imposes an “antecedent duty unrelated to the employment relationship between the tortfeasor and the United States,” as required by this court’s precedent in Leleux. However, neither the plaintiffs nor the government has pled or cited section 160.010 of the Texas Occupation Code. To the extent the plaintiffs were required to plead and prove malice to “state a cause of *497 action against a hospital,”[49] they have failed to do so. To the extent the government might have been required to plead immunity,[50] it did not do so, nor did it establish such immunity as a matter of law.[51] On remand, the district court will have the task of determining the precise contours of the duty the government owed to the plaintiffs and determining whether there was a breach based on the facts before it and the procedural posture of this case.

. 487 U.S. 392, 403 n. 8, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988).

. Ante, at 489-90 n. 7.

. See Leleux v. United States, 178 F.3d 750, 757 (5th Cir.1999) (concluding that “Sheridan stands for the principle that negligence claims related to a Government employee's [28 U.S.C.] § 2680(h) intentional tort may proceed where the negligence arises out of an independent, antecedent duty unrelated to the employment relationship between the tortfea-sor and the United States”).

. Fed.R.Civ.P. 52(c).

. 28U.S.C. § 1346(b).

. Id. § 2680(h).

. 487 U.S. 392, 108 S.Ct. 2449, 101 L.Ed.2d 352.

. Id. at 403 n. 8, 108 S.Ct. 2449.

. Id. at 402 n. 7, 108 S.Ct. 2449.

. 838 F.2d 220 (7th Cir.1988).

. Sheridan, 487 U.S. at 402 n. 7, 108 S.Ct. 2449.

. 838 F.2d at 224.

. United States v. Shearer, 473 U.S. 52, 55, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985) ("There is no indication that Congress distinguished *493 between 'negligent supervision' claims and respondeat superior claims, with only the latter excluded under the Act.”; “No one suggested that liability would attach if the Government negligently failed to supervise such an assailant.”); see also id. at 56, 105 S.Ct. 3039 ("Once again, [in amending § 2680(h) to waive sovereign immunity for claims arising out of the intentional torts of law enforcement officials,] Congress did not hint that it thought the Government’s liability for an assault and battery turned on the adequacy of supervision or warnings.”).

. Doe, 838 F.2d at 223.

. Id.

. Id.

. Id. at 224.

. 178 F.3d 750 (5th Cir.1999).

. Id. at 756 n. 5.

. 487 U.S. at 403 n. 8, 108 S.Ct. 2449.

. 473 U.S. 52, 55, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985).

. 776 F.2d 116, 117-18 (5th Cir.1985).

. Leleux, 178 F.3d at 757.

. Id.

. Id. at 758.

. Mat 757.

. Id. at 756 n. 5, 757.

. Ante, at 489-90 n. 7.

. 866 F.2d 493 (D.C.Cir.1989).

. Mat 495.

. Id. at 498.

. Id. (“We need not reach the more troublesome question whether the government would be liable for the mere negligent retention and supervision of a medical technician known to be psychologically disturbed.”).

. 178 F.3d 750 (5th Cir.1999).

. Id. at 757 (emphasis added).

. 972 S.W.2d 749 (Tex.1998).

. That legislation is now codified, in part, at Tex. Civ. Prac. & Rem.Code §§ 74.001, et seq. and Tex Occ.Code §§ 160.001, et seq.

. Diversicare Gen. Partners, Inc. v. Rubio, 185 S.W.3d 842, 850 (Tex.2005).

. Id. at 853.

. Id. at 855.

. See Tex. Occ.Code §§ 151.002(a)(l 1), (13); 155.001; 164.052(a)(17); St. Joseph Hosp. v. Wolff, 94 S.W.3d 513, 539-40 (Tex.2002); Gupta v. E. Idaho Tumor Inst., Inc., 140 S.W.3d 747, 752 (Tex.App.—Houston [14th Dist.] 2004, pet. denied); Flynn Bros. v. First Med. Assocs., 715 S.W.2d 782, 785 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

.St. Luke’s Episcopal Hosp. v. Agbor, 952 S.W.2d 503, 508 (Tex.1997) ("We have never dealt with the question of whether a common-law cause of action exists for negligent credentialing.'').

. Id. (citing Park North Gen. Hosp. v. Hickman, 703 S.W.2d 262, 264-66 (Tex.App.—San Antonio 1985, writ ref’d n.r.e.) (upholding a cause of action for negligent credentialing and determining that a hospital has a duty to a patient to exercise reasonable care in the selection of its medical staff); Jeffcoat v. Phillips, 534 S.W.2d 168, 172-74 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref’d n.r.e.) (holding that absent an employer-employee, principal-agent, partnership, or joint venture relationship between a hospital and physician, a hospital is not liable for its credentialing decisions where the patient chooses the physician)).

. Id. ("[W]e reserve for another day whether we recognize a common-law cause of action for negligent credentialing.”).

. Garland Cmty. Hosp. v. Rose, 156 S.W.3d 541, 544 (Tex.2004).

. See Tex. Occ.Code § 151.002(a)(5) (defining "Health care entity”).

. See id. § 151.002(7) (defining "Medical peer review”).

. Section 160.010 provides in pertinent part:
(a) The following are immune from civil liability:
(1) a person who, in good faith, reports or furnishes information to a medical peer review committee or the board;
(2) a member, employee, or agent of the board, a medical peer review committee, or a medical organization committee, or a medical organization district or local intervenor, who takes an action or makes a recommendation within the scope of the functions of the board, committee, or intervenor program, if that member, employee, agent, or intervenor acts without malice and in the reasonable belief that the action or recommendation is warranted by the facts known to that person; and
(3) a member or employee of the board or any person who assists the board in carrying out its duties or functions provided by law.
(b) A cause of action does not accrue against a member, agent, or employee of a medical peer review committee or against a health care entity from any act, statement, determination or recommendation made, or act reported, without malice, in the course of medical peer review.
Id. § 160.010(a), (b).

.St. Lukes Episcopal Hosp., 952 S.W.2d at 509.

. Id.; see also Dallas County Med. Soc'y v. Ubiñas-Brache, 68 S.W.3d 31, 40 (Tex.App.— Dallas 2001, pet. denied) (holding that under former Tex.Rev.Civ. Stat Ann. art. 4495b, § 5.06(Z), now codified in Tex. OccCode § 160.010(b), the plaintiff “had the burden to prove malice to meet the threshold to establish a cause of action for, or to impose, civil liability/' that "[t]o impose liability under the Act required an affirmative finding on the issue of malice,” and that judgment must he rendered for the defendant because the plaintiff’s “omitted issue [was] essential to recovery”).

. See Dallas County Med. Soc’y, 68 S.W.3d at 38 (stating that former Tex.Rev.Civ. Stat. Ann. art. 4495b, § 5.06(Z), now codified in Tex. Occ.Code § 160.010(b), “provides immunity” and that "immunity is an affirmative defense that ordinarily must be pleaded”).

. See id. (stating “the defense of immunity is not waived by the failure to specifically plead it if it is apparent on the face of the petition and established as a matter of law”) (citing Shoemake v. Fogel, Ltd., 826 S.W.2d 933, 937 (Tex.1992)).