*Doe v. United States*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of May, two thousand twenty.

PRESENT:
　　　　　RALPH K. WINTER,
　　　　　RICHARD C. WESLEY,
　　　　　RICHARD J. SULLIVAN,
　　　　　　　*Circuit Judges.*

---

Jane Doe,

　　　　　*Plaintiff-Appellant,*

　　　v.　　　　　　　　　　　　　　　　　　　18-185

United States of America,

　　　　　*Defendant-Appellee,*

Lieutenant General Franklin Lee Hagenbeck,
Brigadier General William E. Rapp,

*Defendants.*[1]

FOR PLAINTIFF-APPELLANT:  KATHRYN POGIN, JADE FORD (Chandini Jha, Kath Xu, Michael J. Wishnie, Shikha Garg, Abigail Olson, Samantha Schnell, *on the brief*), Veterans Legal Services Clinic, Jerome N. Frank Legal Services Organization, Yale Law School, New Haven, CT.

FOR DEFENDANT-APPELLEE:  CHRISTOPHER CONNOLLY (Benjamin H. Torrance, *on the brief*), Assistant United States Attorneys, *for* Geoffrey S. Berman, United States Attorney for the Southern District of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Alvin K. Hellerstein, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant "Jane Doe" appeals a decision of the district court (Hellerstein, *J.*) dismissing her claims under the Federal Tort Claims Act ("FTCA") and Little Tucker Act ("LTA") against the United States. Doe, a former cadet at the United States Military Academy ("West Point"), alleges that she was sexually assaulted by a fellow cadet in 2010. In 2013, Doe brought claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against two high-ranking military officials based on their roles in developing and overseeing West Point's allegedly

---

[1] The Clerk of Court is directed to amend the caption as set forth above.

2

inadequate sexual assault policies; FTCA claims against the United States based on those same allegedly inadequate policies; and a contract claim under the LTA on the theory that by implementing the allegedly inadequate sexual assault policies, the United States breached the "agreement" it entered into with Doe when she joined West Point as a cadet. The district court dismissed all claims except for Doe's *Bivens* equal protection claim. *Doe v. Hagenbeck*, 98 F. Supp. 3d 672 (S.D.N.Y. 2015). Lieutenant General Hagenbeck and Brigadier General Rapp filed a notice of interlocutory appeal regarding Doe's *Bivens* equal protection claim, and on appeal, a panel of this Court concluded that her *Bivens* claim was barred by the doctrine of intramilitary immunity established in *Feres v. United States*, 340 U.S. 135 (1950). *Doe v. Hagenbeck* ("*Doe I*"), 870 F.3d 36 (2d Cir. 2017). Accordingly, we remanded to the district court with instructions to dismiss that claim.

Now before the Court are Doe's FTCA and LTA claims. Principally, Doe argues that (1) her FTCA claims are not barred by intramilitary immunity because her rape was not "incident to service;" and (2) the district court erred in dismissing her LTA claims, and a previous motions panel of this Court erred in concluding that those claims did not present a federal question. We assume the parties' familiarity with the underlying facts and the record of prior proceedings, a detailed recitation of which is provided in *Doe I*, and refer to them only as necessary to explain our decision to affirm.

## I. Standard of Review

In considering a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1), we "review factual findings for clear error and legal conclusions *de novo*." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (internal quotation marks omitted). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.*

## II. Doe's FTCA Claims

Doe brings a number of claims under the FTCA, arguing that Defendants Hagenbeck, Rapp, and other West Point officials negligently trained and supervised West Point cadets and staff concerning sexual assault; implemented inadequate sexual assault policies; "created an unreasonable risk of causing [Doe] emotional distress" by creating and maintaining inadequate policies concerning sexual assault, failing to discipline assailants, and tolerating sexually aggressive conduct, J. App'x 62–63; and failed to investigate and punish instances of sexual assault in order "to conceal the true extent of the sexual violence at West Point," J. App'x 63. The government argues that these claims are foreclosed by our decision in *Doe I*. We agree.

Under *Feres v. United States*, "the Government is not liable under the [FTCA] for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." 340 U.S. at 146. *Feres* requires dismissal of a suit in which "commanding officers would have to stand prepared to convince a civilian court of the

4

wisdom of a wide range of military and disciplinary decisions; for example, whether to overlook a particular incident or episode, whether to discharge a serviceman, and whether and how to place restraints on a soldier's off-base conduct."  *United States v. Shearer*, 473 U.S. 52, 58 (1985).

In *Doe I*, we concluded that Doe's *Bivens* claims were barred by the doctrine of intramilitary immunity because her injuries occurred "incident to service."  870 F.3d at 45.  In doing so, we concluded that her allegations "center on the implementation and supervision of allegedly inadequate and harmful training and education programs relating to sexual assault and harassment;" "the alleged failure to provide properly . . . for the report and investigation of sexual assault claims, and for the support of cadets who are assaulted;" "the alleged lack of sufficient numbers of female faculty and administrators at West Point and on the failure to recruit female cadets;" "the allegedly inadequate punishment meted out not only to perpetrators of sexual violence but also to those who engage in misogynistic chants, slurs and comments;" and, "most broadly, on the assertedly culpable tolerance of a hostile culture toward women at West Point."  *Id.* at 46.  We determined that "[a]djudicating such a money damages claim would require a civilian court to engage in searching fact-finding about Lieutenant General Hagenbeck and Brigadier General Rapp's 'basic choices about the discipline, supervision, and control' of the cadets that they were responsible for training as future officers."  *Id.* (quoting *Shearer*, 473 U.S. at 58).  Doe's FTCA claims involve the same purportedly

5

wrongful conduct and the same injuries. Accordingly, Doe's FTCA claims are incident to service, and are therefore barred under *Feres*.

Doe's remaining arguments are similarly foreclosed by *Doe I*. For instance, Doe contends that, under *Taber v. Maine*, 67 F.3d 1029 (2d Cir. 1995), her injuries were not within the scope of her military employment. But as the Court explained in *Doe I*, *Taber* did not create a new test for immunity, and *Feres* remains good law. *Doe I*, 870 F.3d at 47 n.9 (noting that "*Taber* could not be read to alter the reach of *Feres*, which was then and remains binding precedent"). And as we also noted in *Doe I*, "in the FTCA context, *Taber* itself noted . . . that the incident-to-service rule (regardless of workers' compensation considerations) is properly invoked when adjudicating the claim of a service member would require 'commanding officers . . . to stand prepared to convince a civilian court of the wisdom of a wide range of military and disciplinary decisions.'" *Id.* at 48 (quoting *Taber*, 67 F.3d at 1049). "This is precisely the problem with Doe's claim here." *Id.*

Put simply, although Doe frames her suit as related to her role as a student and not her role as a soldier, the Court in *Doe I* has already concluded otherwise. *Id.* at 48 (finding Doe's argument that she "was not a soldier on the battlefield, but a student attending college" to be "both contrary to the case law and unsupported by the factual allegations in Doe's Amended Complaint"). As we noted previously, Doe was a member of the military, *id.* at 45, subject to military command "'*at all times*,'" *id.* at 48 (quoting 10 U.S.C. § 7446(d)), who was at West Point "'for the purpose of military instruction,'" *id.* at

6

48–49 (quoting 10 U.S.C. § 7449(a)). Her education was "inextricably intertwined" with her "military pursuits." *Id.* at 49. We see no reason to depart from these findings now. Accordingly, we affirm the district court's dismissal of Doe's FTCA claims for lack of subject matter jurisdiction. *See Wake v. United States*, 89 F.3d 53, 57 (2d Cir. 1996) ("[T]he proper vehicle for dismissing a *Feres*-barred FTCA claim is a dismissal for lack of subject-matter jurisdiction."). We therefore do not reach the question of whether the district court erred in dismissing her claims under the FTCA's discretionary function exception. *See Mitchell v. City of New York*, 841 F.3d 72, 77 (2d Cir. 2016) ("It is well-settled that this court may affirm on any grounds for which there is a record sufficient to permit conclusions of law, including grounds no[t] relied upon by the district court.") (internal quotation marks and alterations omitted)).

### III. Doe's LTA Claim

Doe next contends that the district court erred in dismissing her LTA claim, and that that we should reconsider our prior ruling regarding our jurisdiction over this claim. We disagree. The LTA vests district courts with concurrent jurisdiction for "civil action[s] or claim[s] against the United States, not exceeding $10,000 in amount, founded . . . upon any express or implied contract with the United States . . . in cases not sounding in tort." 28 U.S.C. § 1346(a)(2). Section 1295(a)(2) grants "exclusive jurisdiction" to the Federal Circuit over nontax appeals from decisions of the district courts when "the jurisdiction of that court was based, in whole or in part," on the LTA. *United States v. Hohri*, 482 U.S. 64,

7

68–69, 75–76 (1987) (quoting 28 U.S.C. § 1295(a)(2)).  However, 28 U.S.C. § 1346 "is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages."  *United States v. Testan*, 424 U.S. 392, 398 (1976). As such, a plaintiff bringing a claim under the LTA must identify some statute, regulation, or contractual provision that provides for payment of money damages in the event of a breach.  *See id.*

Before we decided *Doe I*, Doe moved to transfer the government's appeal to the Federal Circuit, arguing that it had exclusive jurisdiction because the district court's jurisdiction was based in part on the LTA.  A motions panel of this Court denied that motion, finding that "the district court's jurisdiction was not based on the [LTA], since [Doe's] contract claim failed to present a substantial federal question."  J. App'x 98 (the "Motions Panel's Order").  After the district court's final judgment following *Doe I*, Doe appealed to the Federal Circuit, which granted the government's subsequent motion to transfer the appeal to the Second Circuit.  The Federal Circuit concluded that the Motions Panel's jurisdictional determination was "law of the case," and that the Federal Circuit lacked jurisdiction to hear the appeal "[b]ecause the district court's jurisdiction was not based in whole or in part on the [LTA]."  J. App'x 168–71.  Doe now asks us to overturn the Motions Panel's Order denying her motion to transfer the government's appeal and to send her appeal back to the Federal Circuit.  We decline to do so.

8

The "law of the case" doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16 (1988) (internal quotation marks omitted). While a court has the "power to revisit prior decisions of its own or of a coordinate court in any circumstance, . . . as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Id.* at 817 (quoting *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983)). The doctrine of the law of the case is, of course, "even less binding in the context of interlocutory orders," as "a motions panel's decision is based on an abbreviated record and made without the benefit of full briefing by the parties, which may result in a less than thorough exploration of the issues." *Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 149 (2d Cir. 1999). Nonetheless, "[t]he major grounds justifying reconsideration" remain "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Doe v. N.Y.C. Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983) (internal quotation marks omitted).

Although the record here was in a sense "abbreviated" given the interlocutory nature of the appeal, *Rezzonico*, 182 F.3d at 149, the motion was nonetheless fully briefed and argued by two sophisticated parties. Moreover, this is not a case in which the Motions Panel "silently address[ed] the jurisdictional question" or where a *pro se* litigant

9

failed to brief a complex jurisdictional issue. *See Lora v. O'Heaney*, 602 F.3d 106, 109 (2d Cir. 2010). And, as explained below, we do not question our jurisdiction over this appeal. In sum, as Doe points to no factual or legal development that the Motions Panel failed to consider, and does not otherwise point to a "clear error" or "manifest injustice" warranting reconsideration, we decline to revisit the Motions Panel's Order, deny Doe's implicit request to transfer this appeal back to the Federal Circuit, and proceed to consider the district court's dismissal of Doe's claim on the merits.

In substance, Doe contends that the "Oath of Allegiance" that she signed when she agreed to attend West Point carried an "implied covenant of good faith and fair dealing" that the United States breached by failing to address the hostile culture toward women that existed at the institution. But the Oath of Allegiance did not create a binding contract with the United States for the purposes of the LTA. West Point cadets are appointed, *see* 10 U.S.C. §§ 7441a, 7442, 7446, and the Supreme Court has emphasized that an appointment does not create a "contract" for the purposes of LTA jurisdiction, *see Army & Air Force Exch. Serv. v. Sheehan*, 456 U.S. 728, 735–38 (1982); *see also United States v. Hopkins*, 427 U.S. 123, 128 (1976) ("[A]bsent specific command of statute or authorized regulation, an appointed employee subjected to unwarranted personnel action does not have a cause of action against the United States."); *Chu v. United States*, 773 F.2d 1226, 1229 (Fed. Cir. 1985). Accordingly, Doe's claim simply "sound[s] in tort," and therefore did not give rise to a claim under the LTA. 28 U.S.C. § 1346(a)(2); *Bembenista v. United*

10

*States*, 866 F.2d 493, 496 (D.C. Cir. 1989).  We therefore affirm the dismissal of Doe's LTA claim.

We have reviewed the remainder of Doe's arguments and find them to be without merit.  For the foregoing reasons, the order of the district court is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court